UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WILLIAM D. JACKSON,

                                                     <u>MEMORANDUM AND ORDER</u>

                   Plaintiff,                           CV 11-3998

-against-                                            (Wexler, J.)

EDDY'S LI RV CENTER, INC., WINNEBAGO
INDUSTRIES, INC., FREIGHTLINER
CUSTOM CHASSIS CORPORATION,
CATERPILLAR, INC., WACHOVIA BANK,
N.A., and WELLS FARGO DEALER
SERVICES, INC.,

                   Defendants.
-----------------------------------------------------------X
APPEARANCES:

        LAW OFFICES OF JOSEPH FALBO, JR.
        BY: JOSEPH FALBO, ESQ.
        Attorneys for Plaintiff
        145 Willis Avenue, Suite 5
        Mineola, NY 11501

        LITCHFIELD CAVO LLP
        BY: CHRISTOPHER A. MCLAUGHLIN, ESQ., TARA E. SMITH, ESQ.
        Attorneys for Defendant Eddy's RV Center, Inc.
        420 Lexington Avenue Suite 1750
        New York, NY 10170

        THE ROSE LAW FIRM
        BY: KEITH BRYAN ROSE, ESQ., MARK W. SKANES, ESQ.
        Attorneys for Defendant Winnebago Industries, Inc.
        501 New Karner Road
        Albany, New York 12205

GOLDBERG SEGALLA
BY: ROBERT MICHAEL COOK, ESQ., SARAH FANG, ESQ.
Attorneys for Defendant Freightliner Custom Chassis Corporation
902 Carnegie Center
Princeton, NJ 08540

HOGAN LOVELLS US LLP
BY: ALLISON J. SCHOENTHAL, ESQ., RENEE MARIE GARCIA, ESQ.
Attorneys for Defendant Wachovia Bank, NA
875 Third Avenue
New York, NY 10022

WEXLER, District Judge

Plaintiff William D. Jackson ("Plaintiff") commenced this action alleging a claim for breach of contract and a variety of warranty claims arising from his ownership of a motor home. The case was brought in the State Court of the State of New York, County of Suffolk and was thereafter removed here. Named as Defendants are Eddy's LI RV Center, Inc. ("Eddy's"), Winnebago Industries, Inc. ("Winnebago"), Freightliner Custom Chassis Corporation ("Freightliner"), Wachovia Bank, N.A. ("Wachovia") and Wells Fargo Dealer Services, Inc. ("Wells Fargo").[1] Presently before the court are Defendants' motions, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint.

BACKGROUND

I.  Factual Background

The facts set forth below are drawn from the allegations of the complaint, as well as

---

[1] Also named as a Defendant in the caption herein is Caterpillar, Inc. ("Caterpillar"). Caterpillar has not appeared herein and the court has received no papers concerning this Defendant. The court assumes that Caterpillar was not served and is not a party hereto.

2

documents properly before the court.

A.  <u>The Parties and the Purchase of the Motor Home</u>

Plaintiff purchased a 2005 Itasca Meridian Motor Home (the "Motor Home") on October 27, 2005, from Defendant Eddy's. Plaintiff took delivery of the Motor Home shortly thereafter on November 18, 2005. Defendant Winnebago is the manufacturer of the Motor Home, and Freightliner manufactured the chassis contained therein.

The purchase price of the Motor Home was $162,508.75. Plaintiff made a down payment of $10,000 and the remainder was financed through Defendant Wachovia. The loan was thereafter serviced by Defendant Wells Fargo. The court refers hereinafter to Wachovia and Wells Fargo collectively as the "Banks." The loan that Plaintiff took out on the Motor Home provided for monthly payments of $1,088 to be paid over a period of twenty-four months. Plaintiff paid all amounts required under the loan until approximately August of 2010, when he ceased making payments.

B.  <u>Problems Alleged With the Motor Home</u>

Plaintiff alleges that since delivery, the Motor Home has been "replete with defects, structurally and mechanically." The defects are alleged to have been "so severe" as to have made it "unsafe for use." Plaintiff states that the Motor Home was returned to Eddy's over 50 times for repair and that it was out of service for approximately twenty-four months. It is stated that all efforts to repair the Motor Home were unsuccessful.

C. The Written Agreements

Plaintiff asserts that warranties were issued by all Defendants. The court details here the written agreements that have been submitted by the parties and that are properly before the court in the context of this motion. Among those documents are written warranties provided by Winnebago and Freightliner. While there is no evidence of a written warranty issued by Eddy's, there is before the court a service contract that appears to have been provided by a company known as "Star RV" (the "Star RV Contract"). The copy of the Star RV Contract provided to the court is unclear and the court cannot discern the date upon which that contract commenced. To the extent that Plaintiff refers to the Star RV Contract as a service contract issued by Eddy's, the court can only assume that the contract was entered into at the time of delivery of the vehicle. While the date and parties to the Star RV Contract are unclear, it is clear that Star RV is not a party hereto, and the complaint contains no allegations with regard to that entity.

The Winnebago warranty (the "Winnebago Warranty") is entitled "2005 New Vehicle Limited Warranty." It is a warranty that Plaintiff received upon taking delivery of the Motor Home and is made to "the owner." The Winnebago Warranty limits Winnebago's duties under its terms to repair or replacement of warranted parts. Specifically excluded from coverage under the Winnebago Warranty is any "undertaking, representation, or warranty" made by any dealer selling Winnebago products. Also excluded from the Winnebago Warranty is any warranty covering the vehicle's chassis. With respect to that part, however, the Winnebago Warranty states that such component may be covered by the manufacturer's separate warranty. As

4

discussed below, that is the case here.

Freightliner, the manufacturer of the chassis contained in the Motor Home extends a written warranty to owners (the "Freightliner Warranty"). Like the Winnebago Warranty, the Freightliner Warranty was delivered to Plaintiff upon taking possession of the Motor Home. The Freightliner Warranty for the basic chassis covers a warranty period of two years or 24,000 miles. Again, like the Winnebago Warranty, the Freightliner Warranty is a limited "repair or replacement" warranty. Further, it is stated to be expressly in lieu of "all other warranties of any kind whether written, oral or implied, including, but not limited to any warranty of merchantability or fitness for a particular purpose."

There is no "warranty" agreement to which the Banks are parties. The only document before the court that relates to the Banks is the financing agreement entered into between Plaintiff and Wachovia (the "Financing Agreement"). Wells Fargo is not a party to that agreement. The Financing Agreement contains no warranty information with respect to the condition of the Motor Home.

II. <u>The Causes of Action Alleged and Prior Proceedings</u>

Plaintiff's complaint contains four causes of action. Plaintiff makes no attempt to separate the Defendants with respect to their liability on any particular cause of action. Instead, it is alleged that all Defendants are liable on each and every claim alleged.

The first cause of action is for breach of contract and breach of express warranty. Plaintiff's second and third causes of action set forth claims of breach of implied warranties.

5

Those claims assert, respectively: (1) breach of the implied warranty of merchantability and (2) breach of the implied warranty of fitness for a particular purpose. The fourth cause of action is alleged to be a claim for rescission. Reading the complaint liberally, the court construes this cause of action as seeking the remedy of rescission of the contract of sale for the Motor Home as well as rescission of the Financing Agreement.

As noted, this action was commenced in New York State Court. The complaint is dated November 15, 2010, but was not filed in state court until January 19, 2011. The case was removed when motion papers filed in opposition to motions to dismiss interposed in state court characterized Plaintiff's claims as being made pursuant not only to state law, but also under the Federal Magnuson Moss Warranty Act. Upon the making of the federal claim, Defendants timely removed the matter to this court. After a conference before this court held shortly after removal, Plaintiff made clear that he did not renounce any federal claim and the matter therefore remained before this court. Thereafter, Defendants interposed the present motions to dismiss, previously made in the state court.

III.   <u>The Motions to Dismiss</u>

Defendants seek dismissal of all causes of action. All Defendants argue that each of Plaintiff's causes of action are barred by the statute of limitations, which accrued upon delivery of the Motor Home. Winnebago, Freightliner, and the Banks argue that they cannot be liable for breach of the contract of sale for the Motor Home, or any contract entered into with Eddy's, in any event, since they were not parties thereto. These Defendants argue similarly that lack of

6

contractual privity with respect to the sale from Eddy's to Plaintiff precludes any claims asserting breach of implied warranties.

As to explicit warranties issued by Winnebago and Freightliner, these companies note that their warranties do not extend to future performance and specifically exclude any implied warranties. The Banks, in addition to arguing that the statute of limitations has run, and their lack of privity on the contract of sale, also note that only Wachovia, and not Wells Fargo, is in privity of contract with Plaintiff with respect to the financing agreement. As to that agreement, Wachovia states that it includes no warranties as to performance of the Motor Home. Wachovia further asserts that it performed fully under the financing agreement when it extended the loan to Plaintiff, and that it is Plaintiff who is in breach thereof for failing to make full payment. Wells Fargo notes that it is even more remote in its relationship with Plaintiff since it was responsible only for serving of the loan, and entered into no agreement whatever with Plaintiff. After outlining relevant legal principles, the court will turn to the merits of the motions.

## DISCUSSION

I.   <u>Standards on Motion to Dismiss</u>

In <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft-quoted" standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 78 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Id</u>. at 45-46. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to

state a claim for relief that is plausible on its face." Twombly, 127 S. Ct. at 1974, see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

While heightened factual pleading is not the new order of the day, Twombly holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Williams v. Berkshire Fin. Grp. Inc., 491 F. Supp.2d 320, 324 (E.D.N.Y. 2007), quoting, Twombly, 127 S. Ct. at 1959. In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party. Watts v. Services for the Underserved, 2007 WL 1651852 *2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. A pleading that does nothing more that recite facts and bare legal conclusions is insufficient to "unlock the doors of discovery . . . and only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S. Ct. at 1950. While a Rule 12 motion is directed only to the sufficiency of the pleading, the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing the action. See Brass v. Amer. Film Techn., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Watts, 2007 WL 1651852 *2.

8

II.     The Magnuson-Moss Warranty Act and The New York Uniform Commercial Code

The Federal Magnuson Moss Warranty Act 15 USC § 2308(a)(c) ("MMWA") provides a private right of action for a consumer against a manufacturer or retailer who, inter alia, fails to comply with the terms of a written or implied warranty. 15 U.S.C. § 2310(d)(1) (2003). Kolle v. Mainship Corp., 2006 WL 1085067 *2 (E.D.N.Y. 2006); see Enobakhare v. Carpoint, LLC, 2011 WL 703920 *8 (E.D.N.Y. 2011). The jurisdictional amount in controversy established by the MMWA is $50,000. 15 U.S.C. §2310(d)(3)(B). As its terms make clear, the MMWA does not provide a separate warranty in all cases, it provides only a federal cause of action under certain circumstances. See Kolle, 2006 WL 1085067 *2 (E.D.N.Y. 2006). Additionally, the MMWA does not create new implied warranties for sales of goods. Thus, with respect to an implied warranty, the MMWA means "an implied warranty arising under State law ... in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7) (2003). Enobakhare, 2011 WL 703920 *9 (E.D.N.Y. 2011); Cannon v. Newmar Corp., 287 F. Supp.2d 222, 226 (W.D.N.Y. 2003). Thus, the law of the State of New York applies to Plaintiff's claims, including any claim for breach of implied warranties. Cali v. Chrysler Group LLC, 2011 WL 383952 *3 (S.D.N.Y. 2011).

Under New York law, a seller may extend or exclude express and/or implied warranties. While claims made pursuant to written warranties do not require a showing of privity of contract, New York law allows claims of implied warranty to be brought only by those in privity with the named defendant. Abraham v. Volkswagen of America, Inc., 795 F.2d 238, 248 (2d Cir. 1986);

9

Cali v. Chrysler Group LLC, 2011 WL 383952 *3 (S.D.N.Y. 2011).

Implied warranties include the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. In New York, any implied warranty of merchantability is governed by Section 2-314 of the New York Uniform Commercial Code ("UCC"). That section provides, in pertinent part, that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2-314(1). Further, the UCC provides that to be merchantable, the goods must be: (1) fit for the ordinary purpose for which they are used; (2) capable of passing without objection in the trade under the contract description; and (3) of fair and average quality for such goods. N.Y.U.C.C. § 2-314(2)(c). With respect to motor vehicles, it has been held that the "ordinary purpose" to which the implied warranty speaks is "to enable the purchaser to transport herself upon the streets and highways ... in a reasonably safe manner." Enobakhare, 2011 WL 703920 *9 (citations omitted).

III.     Applicable Statutes of Limitation

Claims brought pursuant to the MMWA and the NYUCC are governed by the four year statute of limitations set forth in section §2-725 of the NYUCC. Murungi v. Mercedes Benz Credit Corp., 192 F. Supp.2d 71, 79 (W.D.N.Y. 2001); Woods v. Maytag Co., 2010 WL 4314313 *2 (E.D.N.Y. 2010). While claims for breach of contract under New York law are generally covered by a six year statute of limitations, that limitations period does not apply where, as here, the contract at issue is for the sale of goods and is therefore governed by the UCC. N.Y. CPLR

213; see e.g., Fazio v Ford Motor Corp., 415 N.Y.S.2d 889, 896 (2d Dep't. 1979). Thus, each of Plaintiff's claims is governed by a four year statute of limitations.

As to accrual of claims alleging breach of warranty and/or contract for the sale of goods, the NYUCC specifically defines the date of accrual as:

> when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

NYUCC 2-275(2). As the foregoing language makes clear, the statute of limitations begins to run "on tender of delivery." Accrual is extended to the time of discovery of the breach only in cases of explicit extension of the warranty at issue to future performance. Additionally, knowledge of a defect has no effect whatever on the running of the statute. Statler v. Dell, Inc., 775 F.Supp.2d 474, 481 (E.D.N.Y. 2011); see Brady v. Lynes, 2008 WL2276518 *11 (S.D.N.Y. 2008) (argument that breach occurs upon discovery is "contrary to black letter law"); Morgan v. Abco Dealers, Inc., 2007 WL 4358392 * 6 (S.D.N.Y. 2007); Orlando v. Novurania of America, Inc., 162 F. Supp.2d 220, 224 (S.D.N.Y. 2001).

IV.   Disposition of the Motions

   A.   Eddy's Motion

Eddy's argue that the complaint must be dismissed in its entirety because all claims are barred by the statute of limitations. The court agrees.

Any claim sounding in breach of contract arising out of the contract of sale and/or breach of express or implied warranty accrued on the date of delivery of the Motor Home – November

11

18, 2005. That is the date when the Motor Home was delivered, and Plaintiff's knowledge of any defect at that time is of no moment. Thus, to be timely, any action must have been commenced on or before November 18, 2009. This action was not commenced until January 19, 2011, the date of the filing of the summons and complaint. Even considering the date set forth on the face of the state court complaint, November 15, 2010, as the date of commencement of this action, would render this action untimely by more than a year. Accordingly, all claims are untimely, and, as discussed below, no argument set forth by Plaintiff seeking to have his claims held timely succeeds.

First, the court rejects any argument seeking to delay accrual of Plaintiff's causes of action based upon discovery of any defect or breach. As noted, the NYUCC limits specifically those claims subject to a "discovery of the breach" rule to cases where "a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance . . . ." NYUCC 2-725(2). There can be no claim of delayed accrual for future performance of any implied warranty, as such extension must be explicit, and is therefore inconsistent with the concept of an implied warranty. Woods, 2010 WL 4314313*3.

Repair obligations place accrual of a cause of action beyond the date of delivery only if the warranty: (1) involves specific contractual obligations that can be deemed to accrue after delivery, or (2) explicitly extends particular obligations beyond the four year period of warranty. It is only in such cases, which is not the case here, that courts find express warranties extend to future performance. Woods, 2010 WL 4314313 *3; Orlando, 162 F. Supp.2d at 224; e.g., Long

12

Island Lighting Co. v. Imo Industries Inc., 6 F.3d 876, 890 (2d Cir. 1993) (warranty held to accrue only upon date when goods sold were "in place"); Shapiro v. Long Island Lighting Company, 418 N.Y.S.2d 948, 950 (2d Dep't. 1979) (explicit agreement to replace a defective heater for a ten year period allowed claim to be brought after expiration of four year period of warranty). Here, there is no language that can be relied upon in support of any claim of an explicit extension of any warranty to future performance. Accordingly, the court holds that future performance cannot extend accrual of the statute of limitations beyond the date of delivery.

Plaintiff also attempts to save his claims on the ground that they are not warranty claims, but claims sounding in products liability. As such, Plaintiff argues that his claims did not accrue until the date of injury, or until Plaintiff discovered that the defects in the Motor Home could not be repaired. Aside from the facts that: (1) Plaintiff's complaint nowhere sets forth a cause of action in tort and (2) he claims knowledge of his injury almost immediately after delivery of the Motor Home, Plaintiff's attempt to characterize his claims as sounding in tort must be rejected. Where, as here, Plaintiff alleges nothing more than economic injury stemming from an allegedly faulty product, his claim can be only in contract and not in tort. See Bocre Leasing Corp. v. General Motors Corp. (Allison Gas Turbine Div.), 621 N.Y.S.2d 497, 498 (1995); Westport Marina, Inc. v. Boulay, 783 F. Supp.2d 344, 351-52 (E.D.N.Y. 2010).

Finally, Plaintiff's papers set forth a weak argument that Eddy's is somehow estopped from relying on a statute of limitations defense. Thus, Plaintiff argues that his claims are saved by the equitable principles of fraudulent concealment and/or equitable estoppel. In support of the

argument that equity saves his claims, Plaintiff states that Defendants misrepresented two facts regarding the Motor Home. First, Plaintiff relies on statements made by an Eddy's salesman regarding the quality of the Motor Home. Specifically, the Eddy's salesman is alleged to have stated that "this is the best motor home in its class, and Winnebago has a great reputation because it always stands behind its product." Second, Plaintiff appears to allege that the Motor Home's chassis was represented to be new when, in fact it was not.

The doctrine of equitable tolling applies where defendant's fraudulent conduct results in Plaintiff's lack of knowledge of a cause of action. Pearl v. City of Long Beach 296 F.3d 76, 82 (2d Cir. 2002). Equitable estoppel is a term that has been used to describe circumstances of fraudulent concealment of a cause of action, but also to describe circumstances where a plaintiff is aware of the existence of his cause of action, but the defendant's conduct caused him to delay in bringing his lawsuit. Pearl, 296 F.3d at 82; see Chmiel v. Potter, 2010 WL 5904384 *9 (W.D.N.Y. 2010); Torre v. Columbia University, 1998 WL 386438 *6 (S.D.N.Y. 1998).

When these equitable doctrines apply, "the statute of limitations does not begin to run until 'the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice.' " Cerbone v. International Ladies' Garment Workers' Union, 768 F.2d 45, 48 (2d Cir.1985). To take advantage of tolling, Plaintiff must be able to show that Defendant wrongfully concealed its actions, such that Plaintiff was unable, despite due diligence, to discover facts that would allow him to bring his claim in a timely

14

manner, or that defendant's actions induced Plaintiff to refrain from commencing a timely action. See Statistical Phone Philly v. NYNEX Corp., 116 F.Supp.2d 468, 482 (S.D.N.Y. 2000) (setting forth elements of federal doctrine of equitable tolling); Wolf v. Wagner Spray Tech Corp., 715 F.Supp. 504, 508 (S.D.N.Y. 1989) (setting forth elements of fraudulent concealment tolling doctrine); Gleason v. Spota, 599 N.Y.S.2d 297, 298 (2d Dep't. 1993) (estoppel doctrine applies "where a plaintiff was induced by fraud, misrepresentation, or deception to refrain from timely commencing an action").

When deciding whether to toll the running of the statute of limitations, the issue is not whether Plaintiff was in possession of all of the information necessary to prevail on his claims, but whether plaintiff had enough information to commence a lawsuit. Torre, 1998 WL 386438 *8. Ultimately, tolling can apply only when a plaintiff has acted with reasonable diligence and can show extraordinary circumstances that justify the requested toll. Chmiel, 2010 WL 5904384*9.

The court holds that the statements attributed to the Eddy's salesman, allegedly made at the time of the sale, even if true, are not the type of particular statements that can be relied upon to sustain a claim of fraudulent concealment. The statements were made at the time of the sale and amount to nothing more than puffery regarding the quality of the Motor Home. Plaintiff's vague argument regarding the allegation that the Motor Home or some component therein was not new is not only completely without support, but also information that should have, if true, been known to a diligent plaintiff during the six year course of repair of the Motor Home.

Plaintiff alleges that the Motor Home's defects were apparent almost immediately after delivery. The alleged years of repairs were certainly enough to put Plaintiff under a duty to "make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations." Woods, 2010 WL 4314313 *3 (citations omitted). At this point, the unsupported statements relied upon by Plaintiff cannot be relied upon to invoke equity to save the claims.

For the foregoing reasons, the court grants the motion of Eddy's to dismiss on the ground that all claims are barred by the statute of limitations. The court continues to consider the motions of the remaining Defendants.

B.   Motions of Winnebago and Freightliner

The motions of Winnebago and Freightliner are granted for the same reasons set forth with respect to Eddy's – the claims are time barred and cannot be saved by equity. The court sets forth below additional reasons for granting the motions of these Defendants.

In holding all claims time-barred, the court has assumed the latest possible date of accrual – the 2005 date of delivery of the Motor Home to Plaintiff. With respect to Freightliner, the accrual date is likely even earlier, as it has alleged delivery of the chassis it manufactured to Winnebago in July of 2004. See Heller v. U.S. Suzuki Motor Corp., 64 N.Y.2d 407, 411, 488 N.Y.S.2d 132, 134 (1985) (accrual occurs when "the party charged tenders delivery of the product, not on the date that some third party sells it to plaintiff"); e.g., Solution v. Stewart & Stevenson Services, Inc., 2007 WL 4285377 *11 (E.D.N.Y. 2007); Vanta v. Delta Intern. Machine Corp., 702 N.Y.S.2d 293, 295 (1st Dep't. 2000). In any event, whether considering 2004

or 2005, the claims are time-barred. To the extent that Plaintiff alleges that either Winnebago or Freightliner concealed information about the Motor Home that allows his claims to be saved by equity, any such claim is rejected as completely implausible and without basis.

With regard to Plaintiff's alleged reliance on a statement attributable to, or a warranty issued by Eddy's, any such obligation is not binding on Winnebago and Freightliner as they are not bound by any such statement or agreement. See Carcasole-Lacal v. American Airlines, Inc., 2003 WL 21525484 *4 (E.D.N.Y. 2003) (breach of contract claim held "fatally deficient" in absence of contractual relationship between parties). The lack of privity of contract is also fatal to any claim against Winnebago and Freightliner based upon an alleged implied warranty. Arthur Jaffee Assoc. v Bilsco Auto Serv., 58 N.Y.2d 993, 995 (1983); Parker v. Raymond Corp., 930 N.Y.S.2d 27, 29 (2d Dep't. 2011).

As to any express warranty issued by these Defendants, the written warranties of both Winnebago and Freightliner are limited to repair or replacement of warranted parts. Such "repair or replace," language neither delays accrual nor creates a warranty separate and apart from the product warranty. Instead, such warranties do nothing more than limit Plaintiff's remedy in the event of breach. The law is clear that attempts to repair a warrantied product, within the warranty period, do not toll the four year limitations period. Triangle Underwriters, Inc. v. Honeywell, Inc., 604 F.2d 737, 743 (2d Cir. 1979) (noting that New York and other jurisdictions hold that attempts to remedy defects do not toll the U.C.C.'s four-year period of limitations); Woods, 2010 WL 4314313 *3; Momentive Performance Materials USA, Inc. v. AstroCosmos Metallurgical,

17

Inc., 659 F.Supp. 2d 332, 348-49 (N.D.N.Y. 2009) (same).

Additionally, the Winnebago Warranty excludes specifically any warranties made by a dealer, and the Freightliner Warranty expressly excludes all other warranties "of any kind." Thus, Plaintiff can claim no warranty claim falling outside of the time-barred express limited warranties of these Defendants. For the foregoing reasons and the reasons set forth above with respect to Eddy's motion, the court grants the motions of Winnebago and Freightliner to dismiss the complaint.

    C.    <u>The Banks' Motions</u>

The court also grants the Banks' motions to dismiss on the limitations grounds set forth above, as well as the fact that the Banks cannot be responsible for any statements or warranties made by Eddy's or any other Defendant. Additionally, the Banks cannot be liable for any breach of contract or warranty claim arising out of malfunction of the Motor Home. The only contract entered into with respect to these Defendants is the Financing Agreement. Such agreement is nothing more than a loan of funds and in no way warrants performance of the Motor Home. Wells Fargo's relationship with Plaintiff, as the entity that serviced the Wachovia loan, is even more remote and can in no way be construed to create any warranty as to performance of the Motor Home.

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted in their entirety. The Clerk of the Court is directed to terminate the motions docketed as entries 27, 28, 29 and 30,

and to close the file in this case.

    SO ORDERED.

                                            LEONARD D. WEXLER
                                            UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       February 24, 2012